## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------- x
                                                  :
LOVELYNN GWINN, individually, and on              :
behalf of all others similarly situated,          :      CASE NO. 1:22-cv-2883
                                                  :
                Plaintiff,                        :
                                                  :
        v.                                        :      CLASS ACTION COMPLAINT
                                                  :
LAIRD SUPERFOOD, INC.,                            :      JURY TRIAL DEMANDED
                                                  :
                Defendant.                        :
                                                  :
------------------------------------------------- x
```

Plaintiff Lovelynn Gwinn ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant Laird Superfood, Inc. ("Defendant") based on Defendant's false and deceptive advertising and labeling of its creamer and other food products. Plaintiff makes the following allegations based on the investigation of her counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge.

## INTRODUCTION

1.      This case revolves around a straightforward and systemic course of false, misleading, and unlawful conduct: Defendant has grossly exaggerated the number of servings that some of its Products[1] contain in order to induce consumer purchases and to charge more for them.

---

[1] "Products" is defined further in Paragraph 10.

1

2.     Throughout the statute of limitations period, Defendant has sold the Products to consumers based on the representation that they contain enough powder to make the number of servings specified on the Products.  However, pursuant to Defendant's own serving size, the Products do not contain nearly enough powder to make the number of servings represented on the Products.  In fact, they can make, on average, just 59% of the servings promised.

3.     Plaintiff and other consumers purchased the Products based on the reasonable belief, derived from Defendant's own representation made on the packaging itself, that these Products contained enough powder to make the specified number of servings.  Had Plaintiff and other consumers known the truth (i.e., that the Products do not contain enough powder to make the specified number of servings), they would not have purchased them or they would have paid less for them (i.e., they have paid a price premium as a result of the deceptive serving representation).  Thus, Plaintiff and other consumers have been deceived and have suffered economic injury.

4.     Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled Products during the statute of limitations period, for violations of N.Y. Gen. Bus. Law §§ 349 & 350, and for breach of express and implied warranty, and unjust enrichment.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and

Defendant is a citizen of a state different from at least some members of the proposed Class, including Plaintiff.

6.      This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in New York, or otherwise intentionally did avail itself of the markets within New York, through its sale of the products in New York and to New York consumers.

7.      Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Plaintiff resides in this District and purchased one or more of the Products in this District.

## THE PARTIES

8.      Plaintiff Lovelynn Gwinn is a citizen of the United States and the State of New York, and she currently resides in New York, NY.  In or around early 2021, Plaintiff purchased the Superfood Creamer Original, Superfood Creamer Unsweetened and Superfood Creamer Turmeric Products from the CVS located on 57th Street and 8th Ave.  In purchasing these products, Plaintiff saw and relied on the number of servings specified in the Products' nutritional panel as well as the serving instructions.  Based on these representations, Plaintiff reasonably believed that the Products contained enough powder to make the servings promised because she saw and relied on the representations indicating the number of servings per container prominently printed on the packaging.  Plaintiff's reasonable belief that the Products she purchased could make the stated servings, as expressly represented, was an important factor in her decision to purchase them.  Plaintiff would not have purchased these products, or she would have paid less for it (i.e., she paid a price premium), but for the deceptive serving

representation.    Therefore, Plaintiff suffered injury in fact and lost money as a result of

Defendant's misleading, false, unfair, and deceptive practices, as described herein.

9.        Defendant is a Delaware corporation with its principal place of business in

Sisters, Oregon.    Defendant produces and distributes plant-based coffee and coffee creamer

products, such as the Products at issue in this case.    As such, Defendant is responsible for the

labeling, marketing, sale, distribution, and unlawful conduct alleged herein.

## FACTUAL ALLEGATIONS

**A.**    **The Products At Issue**

10.        The Products at issue in this case include, but are not limited to Defendant's:

a.    Superfood Creamer (Unsweetened);

b.    Superfood Creamer (Original with Functional Mushrooms);

c.    Superfood Creamer (Original);

d.    Superfood Creamer (Chocolate Mint);

e.    Superfood Creamer (Turmeric);

f.    Superfood Creamer (Pumpkin Spice); and

g.    Performance Mushrooms.

11.        The Products are sold across the United States through third party retailers

including grocery chains and large retail outlets, as well as direct to consumer online through

Defendant's e-commerce website www.lairdsuperfood.com.

**B.**    **Defendant Grossly Overstates The Number Of Servings The Products**

**Can Make**

12.        Defendant represents on the packaging of each of the Products that they contain

enough powder to make a specified number of servings.    These serving representations are

4

grossly exaggerated and mislead reasonable consumers into believing the Products can make

significantly more servings than they actually can.

13.    Images of some of the Products' packaging are depicted below:

**Figure 1: Laird Superfood Creamer Unsweetened**

**Figure 2: Laird Superfood Creamer Original with Functional Mushrooms**



**Figure 3: Laird Superfood Creamer Original**

**Figure 4: Laird Superfood Creamer Chocolate Mint**



**Figure 5: Laird Superfood Creamer Turmeric**

**Figure 6: Laird Superfood Creamer Pumpkin Spice**



**Figure 7: Laird Superfood Performance Mushrooms**



14.     For example, as depicted in Figure 1, Defendant represents on the packaging of the Superfood Creamer Unsweetened, 8oz that the Product makes "About 114 servings" per container.  According to Defendant, consumers can obtain the total number of servings (i.e., 114), if they use Defendant's stated serving size of "1 tsp (2g)."

15.     However, one teaspoon of the Superfood Creamer Unsweetened does not weigh 2 grams.  It actually weighs approximately 3.1 grams.[2]  Because the total net weight of the package is 227 grams, using one teaspoon per serving actually yields approximately 73 servings (227 grams / 3.1 grams) – not the 114 servings represented by Defendant.  In other words, a consumer only receives approximately 64% of the promised number of servings.

16.     In sum, following Defendant's own serving size, the Superfood Creamer Unsweetened will yield about 73 servings, which is equivalent to around 64% of the represented number of servings.  Defendant's representation that the Unsweetened Superfood Creamer 8oz product makes 114 servings is therefore false, deceptive, and misleading.

17.     The same or substantially similar deceptive serving representations and shortfalls apply to the other Products as set forth below.

18.     The Superfood Creamer Original with Functional Mushrooms 8oz Product promises "About 114 servings" and states that one serving is "1 tsp (2g)".  *See* Figure 2.  In reality, one teaspoon weighs approximately 3.9 grams.  The total net weight of the Product is 227 grams.  Therefore, the Product can only make approximately 58 servings (227 grams / 3.9

_____

[2] Consumers can reasonably expect to take products in the serving amounts as represented on the packaging.  A consumer derives no value from taking unnecessary and excessive amounts of product per serving.  While this case does not involve any claims for personal injury, increased serving sizes could have negative value, as excessive amounts of the supplements at issue here can even be dangerous.

grams).  In other words, the Product only contains about 51% of the promised number of servings.

19.     The Superfood Creamer Original 8oz Product promises "About 114 servings" and states that one serving is "3/4 tsp (2g)".  *See* Figure 3.  In reality, 3/4th of a teaspoon weighs approximately 2.9 grams.  The total net weight of the Product is 227 grams.  Therefore, the Product can only make approximately 78 servings (227 grams / 2.9 grams).  In other words, the Product only contains about 68% of the promised number of servings.

20.     The Superfood Creamer Chocolate Mint 8oz Product promises "About 114 servings" and states that one serving is "1 tsp (2g)".  *See* Figure 4.  In reality, one teaspoon weighs approximately 4.0 grams.  The total net weight of the Product is 227 grams.  Therefore, the Product can only make approximately 57 servings (227 grams / 4.0 grams).  In other words, the Product only contains about 50% of the promised number of servings.

21.     The Superfood Creamer Turmeric 8oz Product promises "About 114 servings" and states that one serving is "3/4 tsp (2g)".  *See* Figure 5.  In reality, 3/4th of a teaspoon weighs approximately 3.0 grams.  The total net weight of the Product is 227 grams.  Therefore, the Product can only make approximately 75 servings (227 grams / 3.0 grams).  In other words, the Product only contains about 66% of the promised number of servings.

22.     The Superfood Creamer Pumpkin Spice 8oz Product promises "About 114 servings" and states that one serving is "1 tsp (2g)".  *See* Figure 6.  In reality, one teaspoon weighs approximately 3.0 grams.  The total net weight of the Product is 227 grams.  Therefore, the Product can only make approximately 75 servings (227 grams / 3.0 grams).  In other words, the Product only contains about 66% of the promised number of servings.

23. The Superfood Performance Mushrooms Product promises 45 servings per container and states that one serving is "1 teaspoon (2g)". *See* Figure 7. In reality, one teaspoon weighs approximately 4.1 grams. The total net weight of the Product is 90 grams. Therefore, the Product can only make approximately 22 servings (90 grams / 4.1 grams). In other words, the Product only contains about 49% of the promised number of servings.

24. Defendant places a materially identical representation on the packaging of all the Products, although the number of represented servings of course varies based on the package size. Calculations by Product and size are set forth in the following chart:

| Product | Net Weight | Servings Represented | Servings Yielded | Percentage Servings Yielded |
|---|---|---|---|---|
| Superfood Creamer Unsweetened | 227 g | 114 | 73 | 64% |
| Superfood Creamer Unsweetened | 454 g | 227 | 146 | 64% |
| Superfood Creamer Original w/ Functional Mushrooms | 227 g | 114 | 58 | 51% |
| Superfood Creamer Original w/ Functional Mushrooms | 454 g | 227 | 116 | 51% |
| Superfood Creamer Original | 227 g | 114 | 78 | 68% |
| Superfood Creamer Original | 454 g | 227 | 156 | 68% |
| Superfood Creamer Chocolate Mint | 227 g | 114 | 57 | 50% |
| Superfood Creamer Turmeric | 227 g | 114 | 75 | 66% |
| Superfood Creamer Turmeric | 454 g | 227 | 150 | 66% |
| Superfood Creamer Pumpkin Spice | 227 g | 114 | 75 | 66% |
| Superfood Creamer Pumpkin Spice | 454 g | 227 | 150 | 66% |
| Superfood Performance Mushrooms | 90 g | 45 | 22 | 49% |

25. As evident from the chart above, each and every one of the Products contains substantially less content than needed to make the represented number of servings promised on the packaging. On average, the Products can make only about 59% of the promised

servings, revealing a systematic course of unlawful conduct by Defendant to deceive and shortchange consumers.

**C.**     **The False And Deceptive Serving Size Representation Harms Consumers**

26.     Plaintiff and other consumers purchased the Products relying on Defendant's serving size representations on the Products' packaging.

27.     Plaintiff's and consumers' reasonable belief that the Products are able to make the represented number of servings was a significant factor in each of their decisions to purchase the Products.

28.     Plaintiff and Class members did not know, and had no reason to know, that the Products' labeling vastly overstates the number of servings they are able to make.  At the time of purchase, a reasonable consumer cannot measure or calculate how many servings the Products can make.  None of the Products come with scoopers or measuring spoons.  Nor are reasonable consumers expected to keep track of the precise number of servings—particularly over a period of time.

29.     As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Products, Defendant knew or should have known that each of the Products falsely and deceptively overstates the number of servings that can be made.  This is especially true given the increasing number of false advertising class action lawsuits brought in recent years against similar coffee purveyors such as Folgers and Maxwell House over similar issues regarding misleading serving sizes.

30.     Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's serving size representations.

Nonetheless, Defendant deceptively advertises the Products in order to deceive consumers into believing they are getting considerably more of the Product than they are paying for.

31.     Consumers are willing to pay more for the Products based on the belief that the Products contain enough powder to make the represented number of servings.  Plaintiff and other consumers would have paid significantly less for the Products (i.e., they paid a price premium), or would not have purchased them at all, had they known that they were getting fewer servings than what they were promised.

32.     By analogy, if a consumer purchased a six-pack of soda, but only received three cans of soda, he would only be receiving 50% of what he paid for.  The situation here is no different in terms of financial harm to the consumer.  The only difference is that, due to the nature of the Products, Defendant is able to conceal the gross shortfall because reasonable consumers do not keep track of the number of servings they can make over a period of time.

33.     Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this class action pursuant to Fed. R. Civ. P 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

### New York Class

All persons who purchased any of the Products in the state of New York within the applicable statute of limitations period.

**Nationwide Class**

All persons who purchased any of the Products in the United States within the

applicable statute of limitations period.

35.     Excluded from the Classes are the following individuals and/or entities:

Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former

employees, and any entity in which Defendant has a controlling interest; all individuals who

make a timely election to be excluded from this proceeding using the correct protocol for

opting out; and all judges assigned to hear any aspect of this litigation, as well as their

immediate family members.

36.     Plaintiff reserves the right to modify or amend the definition of the proposed

Classes and/or add subclasses before the Court determines whether certification is appropriate.

37.     <u>Numerosity</u>: The proposed Classes are so numerous that joinder of all members

would be impractical.  The Products are sold throughout New York at numerous retailers.  The

number of individuals who purchased the Products during the relevant time period is at least

in the thousands.  Accordingly, Class members are so numerous that their individual joinder

herein is impractical.  While the precise number of Class members and their identities are

unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

38.     <u>Common Questions Predominate</u>: There are questions of law and fact common

to the proposed Classes that will drive the resolution of this action and will predominate over

questions affecting only individual Class members.  These questions include, but are not

limited to, the following:

a.   Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b.   Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c.   Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

d.   Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

e.   Whether Plaintiff and the Classes are entitled to damages and/or restitution, and in what amount;

f.   Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g.   Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

39.   Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products.  Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct.  Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same serving

15

representations, and (b) do not contain enough powder to make anywhere close to the represented serving amount. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

40. <u>Superiority</u>: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

41. <u>Typicality</u>: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

42. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and counsel.

43. Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

**FIRST CLAIM FOR RELIEF**

**Violation of N.Y. Gen. Bus. Law § 349**

(*For the New York Class*)

44.     Plaintiff repeats the allegations contained in paragraphs 1-43 above as if fully set forth herein.

45.     Plaintiff brings this claim individually and on behalf of the members of the proposed New York Class against Defendant.

46.     New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . . " GBL § 349(a).

47.     The practices alleged herein – namely, deceiving consumers into believing that the Products contain enough powder to make substantially more servings than they can actually make – are unfair, deceptive, and misleading, in violation of GBL § 349.

48.     The foregoing deceptive acts and practices were directed at Plaintiff and members of the New York Class.

49.     Defendant's misrepresentations regarding the Products are material to a reasonable consumer because it relates to the amount of product the consumer is receiving and paying for.  A reasonable consumer attaches importance to such representation and is induced to act thereon in making purchase decisions.

50.     Plaintiff and members of the New York Class have been injured as a direct and proximate result of Defendant's violations described above as they would have paid significantly less for the Products had they known that they do not contain enough powder to

provide the stated servings.

51.     As a result of Defendant's unlawful action, Plaintiff and members of the New York Class seek to enjoin Defendant's deceptive and unlawful acts and practices described herein to recover actual damages, fifty dollars, or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## SECOND CLAIM FOR RELIEF

### Violation of N.Y. Gen. Bus. Law § 350
### (*For the New York Class*)

52.     Plaintiff repeats the allegations contained in paragraphs 1-43 above as if fully set forth herein.

53.     Plaintiff brings this claim individually and on behalf of the members of the proposed New York Class against Defendant.

54.     GBL § 350 provides in relevant part: "False advertising in the conduct of any business, trade or commerce . . . in this state is hereby declared unlawful."

55.     In turn, GBL § 350-a defines false advertising as:

"advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity

. . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

56.     Defendant's actions are untrue and misleading through their deceptive packaging of the Products, which represent that the Products contain enough powder to make substantially more servings than they can actually make.

57.     The foregoing misleading acts and practices were directed at Plaintiff and members of the New York Class.

58.     Defendant's misrepresentations regarding the Products are material to a reasonable consumer because it relates to the amount of product the consumer is receiving and paying for.  A reasonable consumer attaches importance to such representation and is induced to act thereon in making purchase decisions.

59.     The foregoing misrepresentations have resulted in consumer injury or harm to the New York public.

60.     Plaintiff and members of the New York Class have been injured as a direct and proximate result of Defendant's violations described above as they would not have purchased the Products, or would have paid significantly less for them, had they known that the Products are unable to make the stated servings.

61.     As a result of Defendant's unlawful action, Plaintiff and members of the New York Class seek to enjoin Defendant's misleading and unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater (or both), as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## THIRD CLAIM FOR RELIEF

### Quasi Contract/Unjust Enrichment/Restitution
### (*For the New York Class*)

62.     Plaintiff repeats the allegations contained in paragraphs 1-43 above as if fully set forth herein.

63.     Plaintiff brings this claim individually and on behalf of the members of the proposed New York Class against Defendant.

64.     As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the New York Class to induce them to purchase the Products.  Plaintiff and members of the New York Class have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendant. Plaintiff and members of the New York Class therefore have been induced by Defendant's misleading and deceptive representations about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

65.     Plaintiff and members of the New York Class have conferred a benefit upon Defendant as Defendant has retained monies paid to them by Plaintiff and members of the New York Class.

66.     The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the New York Class – i.e., Plaintiff and members of the New York Class did not receive the full value of the benefit conferred upon Defendant.

67.     Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon them without paying Plaintiff and the members of the New York Class back for the difference of the full value of the benefits compared to the value

actually received.

68.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the New York Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from their deceptive, misleading, and unlawful conduct as alleged herein.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
(*For the New York Class*)

69.     Plaintiff repeats the allegations contained in paragraphs 1-43 above as if fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the members of the proposed New York Class against Defendant.

71.     New York's express warranty statute provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  N.Y. U.C.C. Law § 2-313.

72.     Defendant have expressly warranted on the Products' packaging that they can each make the stated servings, as more specifically stated in Figures 1-7 *supra*.  However, as alleged herein, this express representation is patently false, as the Products cannot make the stated servings using Defendant's serving instructions.

73.     These representations about the Products: (a) are affirmations of fact or promises made by Defendant to consumers that the Products contain enough powder to make the stated servings; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises.  In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description.

74.     Plaintiff and members of the New York Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

75.     Defendant has breached the express warranties made to Plaintiff and members of the New York Class by failing to manufacture the Products with enough powder to make the stated servings, as expressly warranted on the packaging.

76.     Plaintiff and members of the New York Class paid a premium price for the Products but did not obtain the full value of the Products as represented.  If Plaintiff and members of the New York Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with the Products.

77.     As a result, Plaintiff and members of the New York Class suffered injury and deserve to recover all damages afforded under the law.

78.     In or around November 2021, Plaintiff discovered the foregoing breach.  On December 28, 2021, Plaintiff sent Defendant notice of this breach via a notice letter.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
(***For the New York Class***)

79.    Plaintiff repeats the allegations contained in paragraphs 1-43 above as if fully set forth herein.

80.    Plaintiff brings this claim individually and on behalf of the members of the proposed New York Class against Defendant.

81.    New York's implied warranty of merchantability statute provide that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  N.Y. U.C.C. Law § 2-314.

82.    New York's implied warranty of merchantability statutes also provide that "[g]oods to be merchantable must be at least such as . . . (f) [c]onform to the promises or affirmations of fact made on the container or label if any."  N.Y. U.C.C. Law § 2-314(2)(f).

83.    Defendant is a merchant with respect to the sale of Products.  Therefore, a warranty of merchantability is implied in every contract for sale of the Products to New York consumers.

84.    By advertising the Products with their current packaging, Defendant made a promise on the label that the Products contain enough powder to make the stated servings. But the Products have not "conformed to the promises…made on the container or label" because they do not contain enough powder to make up the stated servings using Defendant's serving instructions. Plaintiff, as well as New York consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable.

85.    Therefore, the Products are not merchantable under New York law and

Defendant has breached its implied warranty of merchantability in regard to the Products.

86.     If Plaintiff and members of the New York Class had known that the Products could not make as many servings as represented, they would not have been willing to pay the premium price associated with them.  Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the New York Class have suffered injury and deserve to recover all damages afforded under the law.

87.     In or around November 2021, Plaintiff discovered the foregoing breach.  On December 28, 2021, Plaintiff sent Defendant notice of this breach via a notice letter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, respectfully pray for following relief:

A.      Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class counsel;

B.      A declaration that Defendant's actions, as described herein, violate the claims described herein;

C.      An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful act described above;

D.      An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.      An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendant's conduct;

F.      An award of punitive damages;

G.      An award to Plaintiff and her counsel of their reasonable expenses and attorneys' fees;

H.      An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Classes, hereby demands a jury trial with respect to all issues triable of right by jury.


DATED: April 7, 2022                    **CUSTODIO & DUBEY, LLP**

                                        By: ___/s/ Robert Abiri_____

                                        Robert Abiri (SBN 238681)
                                        *E-mail: abiri@cd-lawyers.com*
                                        445 S. Figueroa Street, Suite 2520
                                        Los Angeles, CA 90071
                                        Telephone: (213) 593-9095
                                        Facsimile: (213) 785-2899

                                        *Attorney for Plaintiff and the*
                                        *Putative Classes*