```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
LOVELYNN GWINN,                          :
                                         :
                        Plaintiff,       :
                                         :       22cv2883 (DLC)
            -v-                          :
                                         :       OPINION AND ORDER
LAIRD SUPERFOOD, INC.,                   :
                                         :
                        Defendant.       :
                                         :
---------------------------------------- X
```

<u>APPEARANCES</u>:

For plaintiff:
Robert Abiri
Custodio & Dubey LLP
445 S. Figueroa St.
Suite 2520
Los Angeles, CA 90071

For defendant:
Jacob Harper
Heather F. Canner
Davis Wright Tremaine LLP
865 S. Figueroa St.
24th Floor
Los Angeles, CA 90017

Mohammed Basim Pathan
Davis Wright Tremaine LLP
1251 6th Ave
21st Floor
New York, NY 10020

DENISE COTE, District Judge:

   Plaintiff Lovelynn Gwinn has brought this suit, on behalf of putative classes of similarly situated consumers, against Laird Superfood, Inc. ("Laird") for inaccurately describing the

serving size of its powdered creamer products on their nutrition labels.  The defendant has moved to dismiss the plaintiff's complaint.  For the following reasons, the motion is largely denied.

## Background

Unless otherwise noted, the following facts are taken from the Complaint, and are assumed to be true for the purposes of this motion.  Laird sells various powdered coffee additives, including six Superfood Creamer products described as Unsweetened, Original with Functional Mushrooms, Original, Chocolate Mint, Turmeric, and Pumpkin Spice, as well as Performance Mushrooms (collectively, the "Products").  Of the Products, the plaintiff has purchased three Superfood Creamers: Original, Unsweetened, and Turmeric.

Each container of a Product is labeled with Nutrition Facts, as required by the Food and Drug Administration ("FDA").  The label for each Product displays a serving size of 2 grams, and each label states that the Product contains about 114 servings (except for the Performance Mushrooms, which contain 45 servings).  The nutrition labels also provide a serving size in a common household unit -- 1 teaspoon for most of the Products, and 3/4 teaspoons for Original and Turmeric Superfood Creamers.  Additionally, Laird's Superfood Creamers recommend a serving of one tablespoon for every 8 ounces of hot coffee or tea into

2

which they are mixed, and the nutrition labels for the Superfood Creamers state that the containers hold "28 recipes per container."

Gwinn alleges that a teaspoon of each Product in fact weighs more than 2 grams, and that the nutrition labels therefore exaggerate the number of teaspoon- or 3/4-teaspoon-sized servings in each container.  In particular, Gwinn alleges that a teaspoon of Superfood Creamer (Unsweetened) weighs 3.1 grams, a teaspoon of Superfood Creamer (Original with Functional Mushrooms) weighs 3.9 grams, 3/4 teaspoons of Superfood Creamer (Original) weighs 2.9 grams, a teaspoon of Superfood Creamer (Chocolate Mint) weighs 4.0 grams, 3/4 teaspoons of Superfood Creamer (Turmeric) weighs 3.0 grams, a teaspoon of Superfood Creamer (Pumpkin Spice) weighs 3.0 grams, and a teaspoon of Superfood Performance Mushrooms weighs 4.1 grams.

Gwinn filed this action on April 7, 2022, bringing claims on behalf of herself and a putative class of all persons who purchased the Products in New York.  Gwinn brought claims for false or deceptive advertising in violation of New York General Business Law §§ 349 and 350, unjust enrichment, breach of express warranty, and breach of implied warranty.

On June 8, 2022, Laird moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., and for failure to state a claim pursuant to

3

Rule 12(b)(6), Fed. R. Civ. P.  The plaintiff opposed the motion on July 6, but agreed to dismiss without prejudice its claim for breach of implied warranty and its request for injunctive relief.  The motion became fully submitted on July 20.  The case was transferred to this Court on August 17.

## Discussion

I.  Standing

Laird moves to dismiss the plaintiff's claims arising out of products she did not purchase, alleging that she lacks standing to bring those claims.  The plaintiff's standing to sue the defendant is a "threshold question in every federal case." Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 62 (2d Cir. 2012) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).  To satisfy the standing requirements imposed by Article III of the Constitution, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Melito v. Experian Marketing Solutions, Inc., 923 F.3d 85, 92 (2d Cir. 2019) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)).

In a putative class action, a plaintiff has standing to raise claims on behalf of a class if she alleges "(1) that [s]he personally suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such

4

conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 162 (2d Cir. 2012) (citation omitted). Accordingly,

> Courts in this Circuit have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as the products and the false or deceptive manner in which they were marketed are 'sufficiently similar' to the products that the named plaintiff did purchase.

Wai Chu v. Samsung Elecs. Am. Inc., 18CV11742 (GHW), 2020 WL 1330662, at *3 (S.D.N.Y. March 23, 2020) (citation omitted).

The plaintiff has established, for the purposes of Laird's motion to dismiss, that she has standing to bring claims for each Product identified in the complaint. The plaintiff alleges that the Products -- each of which is a powdered coffee additive -- all contain nearly identical nutrition labels. The plaintiff alleges that every nutrition label is misleading in the same way, in that they understate the density of the Product, and therefore exaggerate the number of teaspoons in the container. These allegations are sufficient to establish standing at this stage of proceedings.

Laird argues that the Products Gwinn did not purchase -- and particularly the Performance Mushrooms -- contain different

5

ingredients, serve different purposes, and will therefore require different proof to substantiate claims of misleading advertising.  But Laird does not explain why these differences are material for the purposes of standing.  Each Product contains a nearly identical nutritional label that the plaintiff alleges is misleading in a similar way.  As explained below, the Products' nutrition labels are all subject to the same regulatory structure.  And the relevant evidence regarding the claims arising out of each product is likely to be similar as well, requiring proof of the Product's density.

Finally, Laird requests dismissal of the complaint to the extent it asserts claims for products that are not identified in the complaint.  But if the product has not been identified in the complaint, then there is no claim to dismiss.  To the extent that Laird anticipates disputes regarding the scope of discovery, those disputes will be addressed should they arise. If it seeks to ensure that the plaintiff may not assert claims on behalf of consumers who did not purchase any of the products identified in the complaint, it may raise that argument at the class certification stage.

II.  Failure to State a Claim

To survive a motion to dismiss for failure to state a claim, the complaint "must plead enough facts to state a claim to relief that is plausible on its face."  Green v. Dep't of

6

Educ. of City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted).

### A. Preemption

Laird argues that all of Gwinn's claims are preempted by the Food, Drug, and Cosmetic Act (the "FDCA"). The FDCA contains detailed requirements regarding the serving size and number of servings that must be displayed on nutrition labels. See 21 U.S.C. § 343(q). And the FDCA expressly preempts "any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q)." Id. § 343-1(a)(4). Accordingly, courts have found state law consumer protection claims preempted when they challenge the contents of nutritional labels compliant with the FDCA's requirements. See, e.g., Turek v. Gen. Mills, Inc., 662 F.3d 423, 426 (7th Cir. 2011).

The plaintiff's claims are not preempted, however, because taking the complaint's allegations as true, the Products' labels do not comply with the FDCA.  The FDCA requires nutrition labels to display "the serving size which is an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food", as well as "the number of servings . . . per container."  21 U.S.C. § 343(q)(1)(A)-(B).  FDA regulations require that the serving size for a "powder" use a "reference amount[]" of 2 grams.  21 C.F.R. § 101.12(b) tbl. 2.  The nutrition label must display the serving size as a common household measure, with the reference amount in parentheses next to that.  Id. § 101.9(b)(7).  The common household measure used must be the one that "most closely approximates the reference amount."  Id. 101.9(b)(2)(iii).  The "number of servings" shown on the label must be calculated according to reference amount, rather than the household measure, and rounded to the nearest whole number.  Id. § 101.9(b)(8)(i).

Laird argues that its Products comply with the FDCA's requirements, because they list the serving size as 2 grams according to requirements of 21 C.F.R. § 101.12(b) tbl. 2, and because they then correctly calculate the number of servings per container according to 21 C.F.R. § 101.9(b)(8)(i).  But the Complaint does not allege an inaccuracy in the number of 2-gram

8

servings listed on the Products' nutrition labels, but rather an inaccuracy in the household measure used. As a result, it asserts that the labels overstate the number of household measure servings in every container. As other courts have found on almost identical facts, the FDCA does not preempt state law consumer protection claims based on a nutrition label's use of an inaccurate household measure when the FDCA itself prescribes a different household measure. See Yonan v. Walmart, Inc., 591 F. Supp. 3d 1291, 1301-02 (S.D. Fla. 2022); Vigil v. Mars, Inc., 16CV03818, 2017 WL 8294273, at *1 (N.D. Cal. Jan. 9, 2017).

Each of the Products' nutrition labels displays a household measure of either 1 teaspoon or 3/4 teaspoons. But, as alleged in the Complaint, these household measures understate the Products' density. The FDCA allows nutrition labels to use household measures of 1/8, 1/4, 1/2, 3/4, 1, or 2 teaspoons. Id. § 101.9(b)(5)(i). And, according to the Product densities alleged in the Complaint, each Product uses a common household measure larger than the one that "most closely approximates" a 2-gram serving size.[1] Accordingly, the plaintiff has plausibly

---

[1] In particular, according to the Product densities and household measures alleged in the Complaint: the Superfood Creamer (Unsweetened) has a density of 3.1 grams per teaspoon, and therefore should be measured in 3/4 teaspoons; the Superfood Creamer (Original with Functional Mushrooms) has a density of 3.9 grams per teaspoon, and therefore should be measured in 1/2 teaspoons; the Superfood Creamer (Original) has a density of 2.9 grams per 3/4 teaspoons, and therefore should be measured in 1/2

alleged that the nutrition labels do not comply with the FDCA, and her claims are therefore not preempted.

B. False Advertising and Deceptive Business Practices

New York law prohibits "false advertising" and "deceptive acts or practices in the conduct of any business, trade, or commerce in the furnishing of any service in this state." N.Y. Gen. Bus. Law §§ 349(a), 350. A plaintiff bringing a claim under these statutes must allege "(1) that the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 500 (2d Cir. 2020) (citation omitted). An act is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013).

The plaintiff has stated a claim for false advertising and deceptive business practices. The defendant does not dispute that the Products' nutrition labels are directed at consumers.

---

teaspoons; the Superfood Creamer (Chocolate Mint) has a density of 4.0 grams per teaspoon, and therefore should be measured in 1/2 teaspoons; the Superfood Creamer (Turmeric) has a density of 3.0 grams per 3/4 teaspoons, and therefore should be measured in 1/2 teaspoons; the Superfood Creamer (Pumpkin Spice) has a density of 3.0 grams per teaspoon, and therefore should be measured in 3/4 teaspoons; and the Superfood Performance Mushrooms have a density of 4.1 grams per teaspoon, and therefore should be measured in 1/2 teaspoons.

10

And the plaintiff has plausibly alleged that she has been injured because she paid a higher price for the Products she purchased than she otherwise would have. See Orlander v. Staples, Inc., 802 F.3d 289, 302 (2d Cir. 2015) (discussing "price premium" injuries in "consumable goods" cases). Additionally, the plaintiff has plausibly alleged that Laird's nutrition labels materially mislead consumers. The plaintiff alleges that the nutrition labels suggest that 2 grams of a Product fill a larger volume than they in fact do. A reasonable consumer might therefore be misled into thinking that each Product container holds more teaspoon-sized servings than it actually does.

Laird argues that the labels are not misleading, because they accurately state the number of 2-gram servings that each Product container holds. But the plaintiff's claims arise from the inaccuracy of the labels' household measure, not the reference amount. At this stage of the proceedings, there is no reason to assume that consumers care only about the mass of the Products, not its volume.

Laird also argues that the labels on its Creamer Products are not misleading because they recommend a serving of one tablespoon per 8 ounces of coffee, and because the labels accurately state that the Products contain "28 recipes per container" when served in this amount. But the harm from a

11

misleading label is not vitiated as a matter of law by the presence of inconsistent but more accurate information on the label, particularly when consumers have no way to tell from the Product packaging alone which set of information on the label is correct. See, e.g., Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 287-88 (S.D.N.Y. 2014) (finding that a label advertising a product's "Fat Free Milk" could have misled consumers into thinking that the product was fat free, even though the label also advertised the product's "omega-3s" and its fat in the omega-3 oil blend).

Finally, Laird argues that Gwinn's false advertising and deceptive business practice claims are barred by the General Business Law's statutory safe harbor, which provides a "complete defense" to claims arising out of conduct that is "subject to and complies with the rules and regulations of, and the statutes administered by" the federal government. N.Y. Gen. Bus. Law § 349(d). As explained above, however, the plaintiff has plausibly alleged that the Products' labels do not comply with federal law. Accordingly, Laird's motion to dismiss the plaintiff's claims under the General Business Law is denied.

### C. Breach of Express Warranty

Express warranties are governed by N.Y. U.C.C. § 2-313(1)(a), which provides that an express warranty includes "[a]ny affirmation of fact or promise made by the seller to the

buyer which relates to the goods and becomes part of the basis of the bargain." Moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Id. § 2-313(1)(b). Section 2-318 further provides that "[a] seller's warranty whether express or implied extends" to any foreseeable user "who is injured in person by breach of the warranty."

Laird moves to dismiss the plaintiff's express warranty claim, because the plaintiff alleges that she purchased Products from CVS, and therefore is not in privity with Laird. But the New York Court of Appeals has dispensed with the requirement of privity in cases involving breach of an express warranty even where, as here, only economic damages are alleged. Randy Knitwear, Inc. v. Am. Cyanamid Co., 11 N.Y.2d 5, 16 (1962); Jesmer v. Retail Magic, Inc., 863 N.Y.S.2d 737, 739 (2d Dep't 2008); Murrin v. Ford Motor Co., 756 N.Y.S.2d 596, 597 (2d Dep't 2003). As the New York Court of Appeals observed:

> The policy of protecting the public from injury, physical or pecuniary, resulting from misrepresentations outweighs allegiance to old and out-moded technical rules of law which, if observed, might be productive of great injustice. The manufacturer unquestionably intends and expects that the product will be purchased and used in reliance upon his express assurance of its quality. . . . Having invited and solicited the use, the manufacturer should not be permitted to avoid responsibility, when

13

> the expected use leads to injury and loss, by claiming that he made no contract directly with the user.

Codling v. Paglia, 32 N.Y.2d 330, 339 (1973) (citing Randy Knitwear, 11 N.Y.2d at 13).

Laird argues that, because Randy Knitwear predated the effective date of the UCC (1964) and the subsequent amendment of § 2-318 (1975), it is no longer good law.  The commentary on relevant UCC sections, however, indicates that Randy Knitwear remains controlling precedent despite the subsequent enactment of the UCC.  It explains that "the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract."  N.Y. U.C.C. § 2-313, cmt.2 (discussing express warranties); see also Vermont Plastics, Inc. v. Brine, Inc., 79 F.3d 272, 280 (2d Cir. 1996) (discussing the same comment to the same provision of the Vermont UCC and finding that "[a]ccording to the comment, among the circumstances in which contractual privity is not required are (1) bailments for hire, and (2) situations covered by [§] 2-318. . . . Beyond these two circumstances, however, the matter is left to the case law." (citation omitted)).  Thus, the adoption of the UCC leaves Randy Knitwear undisturbed.

14

The comments accompanying § 2-318 further support this view.  The New York annotations to § 2-318 explain that:

> [T]he Code enlarges the number of prospective plaintiffs in a warranty action but it does not increase the number of potential defendants.  In no way is the Code intended to limit the extension of warranty protection by the courts to a greater number of plaintiffs or the expansion of the manufacturer's liability as in Randy Knitwear.

N.Y. U.C.C. § 2-318, N.Y. Annotations.  See also Barkley Clark and Christopher Smith, 1 Law of Prod. Warranties § 10:11 (2015) (observing that "§ 2-318 is 'neutral' on vertical privity," and "the great weight of authority follows Randy Knitwear").  The official and state-specific comments on §§ 2-313 and 2-318 thus show that Randy Knitwear's holding remains good law even though it predates the UCC.

Courts in this Circuit have reached differing conclusions about whether the UCC has displaced Randy Knitwear's holding that privity is not required for a breach of express warranty claim.  Compare Klausner v. Annie's, Inc., 581 F. Supp. 3d 538, 550 (S.D.N.Y. 2022) (requiring privity when only economic damages are alleged) with Brady v. Anker Innovations Ltd., 18CV11396 (NSR), 2020 WL 158760, at *10–11 (S.D.N.Y. Jan. 13, 2020) (declining to require privity).  For the reasons given above, the plaintiff's lack of privity with Laird does not defeat her claim for breach of express warranty.

D. Unjust Enrichment

Laird moves to dismiss the plaintiff's claim for unjust enrichment. To sustain a claim for unjust enrichment, a plaintiff must plausibly allege "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Myun-Uk Choi v. Tower Research Capital LLC, 890 F.3d 60, 69 (2d Cir. 2018) (citation omitted). "[U]njust enrichment is not a catchall cause of action to be used when others fail." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012). It "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id.

The plaintiff's claim for unjust enrichment must be dismissed as duplicative of her General Business Law and breach of warranty claims. Each claim is based on precisely the same conduct -- i.e., the allegedly misleading household measures on the Products' nutrition labels.

The plaintiff argues that her unjust enrichment claim is not duplicative, because her other claims require proof of certain elements that are not required by an unjust enrichment claim. But, as made clear in the decisions that the plaintiff herself cites, the relevant inquiry is not whether the elements of the causes of action are identical, but whether the plaintiff could support a claim for unjust enrichment without proving the

16

facts underlying her other claims. The plaintiff has not explained how she could succeed on an unjust enrichment claim in this case while failing to support either her breach of warranty or General Business Law claims. Accordingly, her claim for unjust enrichment must be dismissed.

III. Leave to Amend

The plaintiff requests that, if any of her claims are dismissed, she be granted leave to amend her complaint. In general, leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend may be denied, however, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Eastman Kodak Co. v. Henry Bath LLC, 936 F.3d 86, 98 (2d Cir. 2019) (citation omitted). Additionally, a plaintiff "need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014).

Leave to amend is not appropriate here, because amendment would be futile. Laird's motion to dismiss has been granted only against the plaintiff's claim for unjust enrichment. That claim is dismissed because it is based on the exact same conduct as the plaintiff's other claims, and is therefore duplicative of them. This is a fundamental defect that cannot be cured by

amendment.  Additionally, the plaintiff has not explained how an amendment could cure this deficiency.  Accordingly, leave to amend is denied.

## Conclusion

The defendant's June 8, 2022 motion to dismiss is granted with respect to the plaintiff's claim for unjust enrichment, but otherwise denied.

Dated:   New York, New York
         December 1, 2022

                                        _____
                                        DENISE COTE
                                        United States District Judge