**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------ x
                                                       :
LOVELYNN GWINN, individually, and on                   :
behalf of all others similarly situated,               :        CASE NO. 1:22-cv-02883-DLC
                                                       :
                                                       :
                    Plaintiff,                         :
                                                       :
            v.                                         :
                                                       :
LAIRD SUPERFOOD, INC.,                                 :
                                                       :
                    Defendant.                         :
                                                       :
------------------------------------------------------ x
```

**<u>JOINT STATUS UPDATE</u>**

Pursuant to the Court's January 5, 2023 Pretrial Scheduling Order (ECF No. 35) and the Court's February 24, 2023 Order on the Letter Motion for Extension of Time (ECF No. 39), the Parties hereby file this Joint Status Update.

**1.    Update of Events**

The Parties engaged in mediation on March 30, 2023 before Mr. Brian Gallagher, Esq. after referral from the Court's mediation program. Unfortunately, no agreement was reached during mediation.

The Parties have further exchanged initial disclosures, as well as expert designations and reports concerning the metrology issues in this matter pursuant to the Court's Order. No other discovery has been conducted.

**2.      Settlement and ADR**

The Parties believe an additional private mediation may be fruitful.

**3.      Scheduling**

The Parties have differing proposals for next steps in this litigation.

**A.      Defendant's Proposal**

Defendant proposes that this case can be resolved quickly through *Daubert* motions that address the sufficiency of the bases for Plaintiff's measurement claims, as the Court suggested at the January 5, 2023 pretrial conference.  If, for example, the Court grants Defendant's *Daubert* motion, then Plaintiff would be without a factual basis for her claims, and the case can be resolved through summary judgment.   If, however, the Court does not preclude the evidence through a *Daubert* motion, the parties can proceed to class certification.

Thus, Defendant proposes that, in the interest of judicial efficiency and preserving the Court's and the parties' resources, the parties first resolve dispositive expert issues, and the Court enter the following schedule.

| Event/Deadline | Date |
|---|---|
| Deadline to file *Daubert* motion | June 30, 2023 |
| Deadline for Oppositions to *Daubert* motions | July 21, 2023 |
| Deadline for Replies in support of *Daubert* motions | July 31, 2023 |
| Hearing on *Daubert* motions | August 10, 2023 |

Defendant proposes that the Court defer setting any other dates in the action.  After resolution of this motion or motions, Defendant proposes that the Court hold a further status

conference on whether to proceed to summary judgment or class certification, and associated discovery.

Further, the expert witness disclosure deadline has passed, and therefore Defendant disputes Plaintiff's request for the Court to set further expert disclosure dates.  On January 5, 2023, the Court set deadlines for Plaintiff's expert disclosures and Defendant's rebuttal expert disclosures pursuant to Rule 26(a)(2)(B), and ordered that "[a]ll expert discovery must be completed by April 7, 2023."  (EC No. 35.)   Upon Plaintiff's request, the Court extended Plaintiff's expert disclosure deadline to March 10, 2023, and continued the expert witness discovery completion date to April 28, 2023.  (ECF No. 39.)  In granting the extension, the Court advised that "[t]here shall be no further extension of the March 10 date."  (*Id.*)  Defendant's deadline to identify rebuttal expert witnesses passed on April 28, 2023.  (ECF No. 45.)  As the deadline for the parties to disclose expert witnesses as required under Rule 26(a)(2)(B) has passed, no further expert disclosures are permitted.  Thus, should the Court be inclined to enter any dates beyond those for *Daubert* motions, any schedule should not allow for further expert witness disclosures.

**B.      Plaintiff's Proposal**

Plaintiff is not necessarily opposed to conducting the *Daubert* motions on an advanced schedule with respect to the metrology experts. Plaintiff also sees a benefit to moving forward with a traditional schedule associated with putative class actions such as this matter, and presents the timeline below as an alternative.

Plaintiff however disagrees that the expert disclosures applied to all experts in this matter. During the telephonic pretrial conference held on January 5, 2023, the Court focused its

discussion on the metrology experts and provided its timeline for expert reports and disclosures based solely on timing related to Plaintiff's metrology expert being able to produce a report. (See Transcript, Ex. "A" [repeatedly referring to the "expert" report in the singular; p. 6:22-23 ("Experts are going to opine on how many teaspoons one package of this product is correctly measured to hold…") It would have been impractical, if not impossible, for Plaintiff to provide the expert reports commonly associated with putative consumer class actions on such a short timeframe. For example, Plaintiff would need a consumer perception survey and an economic analysis conducted to determine the price premium associated with the missing product. This would logically require the metrologist comes first before the economist, as it is likely the economist would rely on the metrologist's findings. Moreover, these experts would need the benefit of discovery in order to do surveys, as well as to do the economic analysis as they would rely on sales data, competitor information, and other information and documents that can only be obtained through discovery. Plaintiff's interpretation of the Court's order was therefore that it was limited to the metrology expert reports, which is what both parties have now exchanged.

Plaintiff's Proposed Timeline:

| EVENT/DEADLINE | DATE |
| --- | --- |
| Last day to file Plaintiff's Motion for Class Certification | June 7, 2024 |
| Plaintiff's Further Expert Disclosures and Reports Due | June 7, 2024 |
| Last day to file Laird's Opposition to Plaintiff's Motion for Class Certification | July 12, 2024 |
| Laird's Further Expert Disclosures and Reports due | July 12, 2024 |

| EVENT/DEADLINE | DATE |
|---|---|
| Last day to file Plaintiff's Reply in Support of Motion for Class Certification | August 9, 2024 |
| Plaintiff's Further Rebuttal Expert Reports Due | August 9, 2024 |
| Hearing on Motion for Class Certification | November 22, 2024 (or at the Court's convenience) |
| Last Date to Conduct Settlement Conference or Mediation | June 7, 2024 |
| Discovery Cutoff | 90 days after decision on class certification |
| Last day to file dispositive motions (if necessary) | 90 days after decision on class certification |
| Last day to file oppositions to dispositive motions (if necessary) | 35 days after filing of dispositive motions |
| Last day to file replies to dispositive motions (if necessary) | 28 days after filing of the oppositions to dispositive motions |
| Hearing on dispositive motions | At the Court's convenience |
| Final Pretrial Conference (Tuesdays) | To be set by the Court |
| Trial | Jury Trial<br>Estimated Length: 5-7 days<br>Date: to be set by the Court |

DATED: May 5, 2023         **CUSTODIO & DUBEY, LLP**

By:    /s/ Robert Abiri

Robert Abiri
*E-mail: abiri@cd-lawyers.com*
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899

*Attorney for Plaintiff and the*
*Putative Classes*

DATED: May 5, 2023                    **DAVIS WRIGHT TREMAINE LLP**

By: ___/s/ Jacob Harper_____ _

Jacob M. Harper
*E-mail:* *jacobharper@dwt.com*
865 S. Figueroa Street, 24th Floor
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

*Attorney for Defendant*

# EXHIBIT "A"

N158LOVC

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
3    LOVELYNN GWINN,
4                   Plaintiff,
5              v.                        22 Cv. 2883 (DLC)
6    LAIRD SUPERFOOD INC.,
7                   Defendant.           Remote Conference
8    ------------------------------x
9                                        January 5, 2023
                                         2:30 p.m.
10
     Before:
11
                      HON. DENISE L. COTE,
12
                                         District Judge
13
                          APPEARANCES
14
     CUSTODIO & DUBEY LLP
15        Attorneys for Plaintiff
     BY:  ROBERT ABIRI
16
     DAVIS WRIGHT TREMAINE LLP
17        Attorneys for Defendant
     BY:  JACOB HARPER
18
19
20
21
22
23
24
25
```

N158LOVC

1          (The Court and parties appearing via teleconference)

2          THE COURT:  Is counsel for the plaintiff ready to

3     proceed?

4          MR. ABIRI:  Yes, your Honor.  Happy New Year.

5          THE COURT:  Could you please state your name on the

6     record.

7          MR. ABIRI:  Yes, your Honor.  This is Robert Abiri for

8     plaintiff, Lovelynn Gwinn.

9          THE COURT:  Thank you.

10          For the defendant, is the defendant ready to proceed?

11          MR. HARPER:  Yes, your Honor.  Good afternoon.  This

12     is Jacob Harper, of Davis Wright Tremaine, for Laird Superfood.

13          THE COURT:  Thank you so much.

14          Counsel, I am going to ask you to identify yourself by

15     name when you speak so that the record is clear.

16          Counsel are in California and have asked to conduct

17     this conference remotely, and I agreed.

18          The motion to dismiss made in this case was denied on

19     December 1st, at least in part.  This has to do with whether or

20     not the label for the products incorrectly indicated the

21     correct teaspoon measures that should be used.

22          There is a potential for class certification here.  I

23     have received the parties' proposals, or maybe I should say

24     Rule 26(f) report.  Thank you for that, counsel.

25          It appears to me that we should only be talking about

N158LOVC

```
1    a New York class.  There are only New York claims.  I don't

2    know that there is a request for any amendment at this time,

3    other than we need a final class definition.

4          So, Mr. Abiri, you had an opportunity to amend

5    already.  Is there going to be a further amendment other than

6    for the class definition?

7          MR. ABIRI:  Your Honor, there is a small potential

8    that we might add a California claim to this, but as of now, I

9    can't say for sure.  So that would be the only aspect of

10   amendment.  But I don't believe so.  So it would only probably

11   be to, like your Honor said, define the class.

12         THE COURT:  Let's have a schedule then for any

13   amendment, knowing that it will be at a minimum to define the

14   class.

15         Shall we say two weeks?  And let me put a date on

16   that.

17         Shall we say January 20, Mr. Abiri?

18         MR. ABIRI:  That should be fine, your Honor.

19         THE COURT:  Thank you.

20         And that will be for amendment and any joinder, though

21   I don't expect you plan to join any additional defendant.  Am I

22   right, Mr. Abiri?

23         MR. ABIRI:  That is correct, your Honor.

24         THE COURT:  OK.  Good.

25         I want to talk with counsel about the sequencing here.
```

N158LOVC

1    And one of the issues that you discuss in your report is when

2    the motion to certify a class should be made.  It's not

3    entirely clear to me what the defense is going to be here.

4    And, Mr. Harper, I would like you to address that as well.  And

5    depending on what I am hearing, I wonder whether we should move

6    directly into expert discovery and if that's a better setup for

7    positioning the case for resolution and eventually, if

8    necessary, for trial.

9              So why don't I start with you, Mr. Harper, and then I

10   will turn to you, Mr. Abiri.

11             Mr. Harper.

12             MR. HARPER:  Thank you, your Honor.

13             I think in terms of defense of the case, I will

14   broadly categorize it under two umbrellas.  One is plaintiff's

15   sort of injury issues, whether there was reliance on the

16   disclosures, and if so, whether she was injured in some way

17   that is common to the class.  And then the second issue is more

18   substantive, and that is whether the label in the disclosures

19   about -- well, whether the label was mislabeled in the first

20   place.

21             I do see the value, your Honor, in having some kind of

22   expedited, or moving up the expert portion of that, because it

23   does seem that the substantive defense, as well as plaintiff's

24   substantive burden, will sort of turn on that issue.

25             THE COURT:  So the allegations in the complaint really

1   hinged on the density of the product and how you get a correct

2   teaspoon measurement with respect to the product or the

3   products.

4            Is the defendant contending that, when you properly

5   measure the product in per teaspoon quantities, that the label

6   was in fact correct?

7            MR. HARPER:  Yes.  And I think going further, we

8   suspect that there is a difference between the way a product is

9   sort of scooped up by a reasonable consumer versus what I think

10  perhaps someone did in preparation of the complaint, which is

11  smash it down and change the normal density.  I think that that

12  has a major impact on how someone would view this.  So I think

13  that your Honor hit it on the head, that the density is one of

14  the core issues here.

15           THE COURT:  So shouldn't we just put expert discovery

16  front and center and have the plaintiff's expert report due,

17  let's say a month from now, and just resolve this on the merits

18  with respect to a decision perhaps on *Daubert* motions or

19  deciding if there is a disputed issue but at least enough to be

20  presented to a jury, Mr. Harper?

21           MR. HARPER:  I think in the abstract that probably

22  works.  We may want to talk about whether a month or two months

23  or whatever, but in terms of getting this resolved, that seems

24  like it would make sense.

25           THE COURT:  So, Mr. Abiri, did you have a reaction?

N158LOVC

1          MR. ABIRI:  Yes, your Honor.  Just to quickly address

2     counsel's points he brought up on his end.

3          We do think there is a common injury to the class.  If

4     they are getting shortchanged on the servings, on the amount of

5     product that's in there, that would be for everyone, not

6     limited to one or two people.  And in terms of the expert

7     reports and things like that, I see your Honor's point.  I

8     would still like to do some discovery at least, and maybe we

9     can push out the expert report exchange a little bit further

10    than a month.  But I would still like to do some discovery and

11    get some more information on my end as well.  But I do see your

12    Honor's point.  Like Mr. Harper said in the abstract.  But

13    perhaps a month down the road may be a little too soon for

14    that, in my opinion.

15         THE COURT:  What discovery do you need in order to

16    submit your expert report?

17         MR. ABIRI:  To submit my expert report, probably not

18    much.  But in terms of understanding Laird's process of how

19    they developed those measurements themselves, I think that

20    would be relevant on our end.

21         THE COURT:  I am not sure I see it the same way.

22    Experts are going to opine on how many teaspoons one package of

23    this product is correctly measured to hold, and whether the

24    defendant was negligent or not in making its own measurements,

25    if there is no misrepresentation or mislabeling, that's the end

N158LOVC

1    of the plaintiff's case.  Correct?

2              MR. HARPER:  I agree, your Honor.

3              THE COURT:  Mr. Abiri.

4              MR. ABIRI:  I understand your Honor's point.

5              THE COURT:  So let's work out a schedule then for

6    expert discovery, or disclosures I should say.

7              How long will it take you to produce your expert

8    report, Mr. Abiri?

9              MR. ABIRI:  I would have to contact my expert and get

10   in touch.  Would the Court be OK with setting it out two

11   months?

12             THE COURT:  Am I right this is how many teaspoons

13   properly measured this bag holds?  Is it that straightforward,

14   Mr. Harper, from your point of view?

15             MR. HARPER:  Yeah.  Frankly, yes.

16             THE COURT:  Mr. Abiri, why don't we compromise here

17   and give you close to two months.  Why don't we have

18   plaintiff's expert report due February 24 and defendant's

19   expert report will be due March 17.  And we will close expert

20   discovery on April 7th.

21             Then, why don't counsel write me by April 14 with your

22   proposals about next steps.  Either there is going to be a

23   *Daubert* motion or a summary judgment motion or an agreement by

24   the parties that we must proceed because there are factual

25   disputes.  I don't want to assume what the outcome of this

N158LOVC

1  exchange of expert reports is going to be.

2          Does that kind of schedule work for you, Mr. Abiri?

3          MR. ABIRI:  Yes, your Honor, that schedule would work

4  for me.

5          THE COURT:  Mr. Harper.

6          MR. HARPER:  Yes, your Honor.  My only question is,

7  for April 14, would your Honor just like a joint submission

8  from both of us, again, sort of along the lines of the Rule 26

9  report?

10         THE COURT:  Yes.  It would be lovely if you have a

11 joint agreed-to proposal.  But if you don't, you will just

12 present each side's proposal, and I will probably get you on

13 the phone and hear you out, and we will come up with another

14 schedule.

15         MR. HARPER:  Fair enough.

16         THE COURT:  Now, counsel, it's also possible that this

17 may be appropriate to be settled very early on and quickly.

18         Is there any possibility of that, Mr. Abiri?

19         MR. ABIRI:  Your Honor, in terms of plaintiff's

20 position, we are open to settlement and mediation.  We

21 discussed it briefly with Mr. Harper when we met and conferred

22 prior to filing our preconference statement, and Mr. Harper can

23 explain on his end, but I believe his client hasn't come back

24 yet with a decision one way or the other.  But in terms of

25 plaintiffs, we are open to that.

N158LOVC

```
 1              THE COURT:  Mr. Harper, is it worthwhile at all
 2     sending you for early mediation or not?
 3              MR. HARPER:  I think it may be.  The reason I didn't
 4     want to commit to Mr. Abiri at the time is because it was the
 5     holidays and I hadn't had a direct conversation with the client
 6     that could give me a yes or no either way.
 7              I will put it this way.  If your Honor orders us to
 8     try to work it out, we will do what we need to do to try to do
 9     that.  I am not promising that it will resolve, but we will
10     work in good faith to do what we need to do.  And if it
11     resolves, it does.  And if we need the expert reports to help
12     push things along, then so be it.
13              THE COURT:  Great.  I am going to say that this case
14     must be mediated during a period that will end on March 17.  So
15     I will send you to a mediator, and I will let counsel and the
16     mediator decide whether to try to mediate this in January or
17     February or early March.  I can see that your positions would
18     be affected potentially by what plaintiff's evaluation of its
19     own expert report is and by the defendant's evaluation of the
20     plaintiff's expert report.  So I will get out an order to that
21     effect.
22              Now, counsel, if you have any disputes during this
23     litigation, you must meet and confer and try to resolve them in
24     good faith.  If you still have a dispute after that process,
25     write me a letter no longer than two pages.  I will get you on
```

N158LOVC

1    the phone and hear you out.

2              OK.  I think we have a schedule at least for the

3    preliminary phase of this case.

4              Mr. Abiri, anything else we need to address?

5              MR. ABIRI:  No, your Honor.  Thank you.

6              THE COURT:  Mr. Harper.

7              MR. HARPER:  No, your Honor.  I appreciate your

8    thoughtful approach to getting this moving along.

9              THE COURT:  Thank you so much.

10             Good luck, counsel.  And again, Happy New Year.

11             (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25