```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
LOVELYNN GWINN,                          :
                                         :
                        Plaintiff,       :   22cv2883 (DLC)
                                         :
            -v-                          :   OPINION AND
                                         :      ORDER
LAIRD SUPERFOOD, INC.,                   :
                                         :
                        Defendant.       :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff:
Robert Abiri
Custodio & Dubey LLP
445 S. Figueroa St.
Suite 2520
Los Angeles, CA 90071

For defendant:
Jacob Harper
Heather F. Canner
Davis Wright Tremaine LLP
865 S. Figueroa St.
24th Floor
Los Angeles, CA 90017

Mohammed B. Pathan
Davis Wright Tremaine LLP
1251 6th Ave
21st Floor
New York, NY 10020

DENISE COTE, District Judge:

Lovelynn Gwinn has brought this suit, on behalf of classes of similarly situated consumers, against Laird Superfood, Inc. ("Laird") for inaccurately describing the serving size of its

powdered creamer products on nutrition labels.  Laird moves to exclude the plaintiff's expert report, which purports to measure the serving size.  The motion is granted.

## Background

The facts underlying this action are described in an Opinion of December 1, 2022, which is incorporated by reference.  See Gwinn v. Laird Superfood, Inc., No. 22cv2883 (DLC), 2022 WL 17363585 (S.D.N.Y. Dec. 1, 2022).  In brief, Laird sells powdered coffee additives, including six Superfood Creamer products described as Unsweetened, Original with Functional Mushrooms, Original, Chocolate Mint, Turmeric, and Pumpkin Spice, as well as Performance Mushrooms (collectively, the "Products").  Each Product container is labeled with nutrition facts.  The Food, Drug, and Cosmetic Act ("FDCA") requires that the serving size and number of servings be displayed on nutrition labels.  See 21 U.S.C. § 343(q).

The FDCA requires nutrition labels to display "the serving size which is an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food," as well as "the number of servings . . . per container."  21 U.S.C. § 343(q)(1)(A)-(B).  FDA regulations require that the serving size for a "powder" use a "reference amount[]" of 2 grams.  21 C.F.R. § 101.12(b) tbl. 2.  The

nutrition label must display the serving size as a common household measure, with the reference amount in parentheses next to it. Id. § 101.9(b)(7). The common household measure used must be the one that "most closely approximates the reference amount." Id. 101.9(b)(2)(iii). If the serving size is expressed using teaspoons, the FDCA allows nutrition labels to use household measures of 1/8, 1/4, 1/2, 3/4, 1, or 2 teaspoons. Id. § 101.9(b)(5)(i). The "number of servings" shown on the label must be calculated according to the reference amount, rather than the household measure, and rounded to the nearest whole number. Id. § 101.9(b)(8)(i).

The FDA has also issued guidance to assist manufacturers in determining the metric equivalents of household measures. See Guidance for Industry: Guidelines for Determining Metric Equivalents of Household Measures, FDA (Oct. 1993) ("FDA Guidance"). The Guidance provides, inter alia:

- "Representative samples of a food should be selected using standard sampling techniques from various lots (Ref. 21 C.F.R. § 101.9 (g)(2))."

- "Good quality laboratory equipment (e.g., graduated cylinders, balances, etc.) should be used to measure or weigh the food. Equipment should be calibrated in accordance with good laboratory practices and/or manufacturer's specifications."

- "Standard analytical practices should be used for accurately determining product weights and volumes. Significant digits should be retained in order to minimize rounding errors in reporting final values."

- "The food volume measured should be at least 10 times the reference amount for the category in order to minimize measuring errors.  (For example, dividing the weight of a cup of a product by 16 and 48 provides the tablespoon and teaspoon weights, respectively.)"

<u>Id.</u>  While the FDA Guidance is nonbinding, it is used by the FDA "to determine the accuracy of nutrition labeling."  <u>Id.</u>

Gwinn alleges that Laird failed to comply with the FDCA by inaccurately describing the household measure of its Products on their nutrition labels.  Gwinn relies on an expert metrology report to show that Laird's teaspoon measurements are incorrect.  Gwinn does not dispute that the correct reference amount for the Products is 2 grams, as reflected on the Products' labels.

I.   Relevant Procedural History

Gwinn filed this action on April 7, 2022, bringing claims on behalf of herself and putative classes of all persons who purchased the Products.  Gwinn brought claims for false or deceptive advertising in violation of New York General Business Law §§ 349 and 350, unjust enrichment, breach of express warranty, and breach of implied warranty.  On June 8, Laird moved to dismiss the complaint.  The plaintiff opposed the motion on July 6, but agreed to dismiss without prejudice its claim for breach of implied warranty and its request for injunctive relief.  The action was reassigned to this Court on August 17, 2022.

The December 1 Opinion largely denied the defendant's motion to dismiss.[1]  The Opinion noted, however, that to avoid preemption by the FDCA, the plaintiff's claim must be based on the theory that the nutrition labels do not comply with the FDCA, i.e., that each Product uses a common household measure larger than the one that most closely approximates a 2-gram serving size.  Gwinn, 2022 WL 17363585, at *3.

Following a conference with the parties, they were ordered on January 5, 2023, to engage in an early exchange of expert disclosures on the issue of metrology, which is the science of measurement.  On March 10, 2023, Gwinn served her expert disclosure pursuant to Federal Rule of Civil Procedure 26(a)(2), identifying Nidal Kahl ("Kahl") as her metrology expert.  On April 28, Laird submitted its expert disclosure, identifying Becki Holmes ("Holmes") as its metrology expert.  On June 30, the defendant moved to exclude Kahl's expert testimony, pursuant to Rules 702, 401, and 403, Fed. R. Evid.  With its July 25 opposition, the plaintiff attached a rebuttal declaration of Kahl dated July 20.  The motion to exclude became fully submitted on August 3.

---

[1] The motion was granted with respect to the plaintiff's claim for unjust enrichment.  See Gwinn, 2022 WL 17363585, at *6.

II.  Kahl's Testimony

Kahl has served as the Director of Biogen Laboratory Developments since 2000.  He received a B.S. from Oregon State University in 1998, where he majored in Microbiology and minored in Chemistry.  Kahl states in his report that "[r]egulatory review and label claim verification of retail product labels are a standard service [he has] conducted at [his] firm for more than two decades."  Kahl explains that he was asked to "verify the total number of household servings that were provided in each" Product container.  The following description of Kahl's testing process is taken from both his initial and rebuttal reports.

Counsel for Gwinn provided Kahl with one container of each of the seven Products at issue.  Plaintiff's counsel had purchased the seven containers at retail stores and arranged for their shipment to Kahl.  As described by Kahl, the labels for four of the Products described serving sizes as 1 tsp, and the labels of three described serving sizes of 3/4 tsp.[2]

Kahl emptied each of the containers to determine the total Product weights and "to loosen the powder blend within the containers."  Kahl then attemped to verify the information on

---

[2] While Kahl lists the claimed serving size for Laird's Superfood Creamer Pumpkin Spice 8 oz. as 3/4 tsp, the nutrition label in the complaint lists it as 1 tsp.

the label "in the same manner one would expect of any consumer." Kahl used "a household 1 teaspoon measuring device" to record "the weight of 12 replicate servings" on "a calibrated laboratory balance." He then calculated the average weight of the 12 measurements. "The serving weight for the 3/4 teaspoon was calculated using 75% of the 1 teaspoon measurement." Kahl does not explain whether he packed or leveled the teaspoon.

Kahl's results were presented in two tables. The tables include information taken from the Product labels, entries reflecting Kahl's measurements, calculations from those measurements, and comparisons between his calculations and the label information. The tables show that the seven containers each contained either the total weight of Product listed on the label or more of the Product.[3] His teaspoon measurements indicated that each of the 1 tsp. measures held over two grams of Product, indeed each weighed between 2.7 and 3.4 grams. The 3/4 tsp. measures also held over two grams of Product, indeed between 2.1 and 2.2 grams. Kahl did not explain the basis for each of the calculations on his tables, but it appears that Kahl divided the actual total weight in each container by his

---

[3] Kahl found that one container held 226.7 grams of Product, while the label listed it as holding 227 grams. The other six containers held between two and thirteen more grams than identified on the labels.

7

teaspoon measurements and determined that the labels were misleading. For instance, when a label for one of the Products indicated that the container held 114 servings, Kahl concluded that it held as few as 77.6.

Kahl presented two conclusions from his work: (1) "The data indicates all containers listing 2g as a 1 teaspoon serving weight on retail packaging are all greater than 2g by at least 35% and up to 71%. Therefore, at least 35% and up to 71% more product is consumed per the household measure printed on the retail labels;" and (2) "The data revealed a shortage of product in each retail container tested by at least 22% and up to 40%; resulting from a larger product weight being consumed per serving in all packages that list 2g as a 1 teaspoon serving weight."

## Discussion

Laird has moved to strike the reports from the plaintiff's expert. Without expert testimony, the plaintiff is not able to show that the Laird Product labels are misleading.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

>    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>    (b) the testimony is based on sufficient facts or data;
>
>    (c) the testimony is the product of reliable principles and methods; and
>
>    (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007). The testimony must be relevant, and it must rest on a reliable foundation. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); Williams, 506 F.3d at 160. An expert's opinion is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; see Daubert, 509 U.S. at 591. Expert testimony that invades the province of the fact finder, however, must be excluded. See United States v. Lumpkin, 192 F.3d 280, 289 (2d Cir. 1999).

An expert's opinion must also have "a reliable basis in the knowledge and experience of his discipline." Daubert, 509 U.S. at 592. A court should consider "the extent to which the

expert's theory has been subjected to peer review and publication, whether the technique is subject to standards controlling the technique's operation, the known or potential rate of error, and the degree of acceptance within the relevant scientific community." United States v. Ulbricht, 858 F.3d 71, 116 n.50 (2d Cir. 2017) (citation omitted).  This "Daubert reliability assessment" is a "flexible" inquiry, however, and "Daubert is not a definitive checklist or test for the reliability of expert testimony."  Id. (citation omitted). "[W]hether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the [court] broad latitude to determine."  Id. (citation omitted).

A court must "assess whether the expert employs the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Restivo v. Hessemann, 846 F.3d 547, 577 (2d Cir. 2017) (citation omitted).  Expert testimony should be excluded "if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison."  Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213-14 (2d Cir. 2009) (citation omitted).

To be admissible, an expert's analysis must be reliable "at every step." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). "[A]ny step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. Id. (emphasis omitted). Moreover, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

For several reasons, the defendant's motion to exclude Kahl's testimony is granted. Before listing those reasons, it is useful to revisit the issue of preemption. As described in the Opinion, the FDCA "expressly preempts any requirement for nutrition labeling of food that is not identical to" the requirements of the Act. 2022 WL 17363585, at *3 (citation omitted). Accordingly, state law consumer protection claims are preempted when they challenge the contents of nutritional labels that are compliant with the FDCA. Id. The defendant's motion to dismiss based on preemption was denied, however, because "taking the complaint's allegations as true," the plaintiff asserted that the Products' labels were inaccurate in the household measure used. Id. At this stage of the proceedings, however, the plaintiff's claim may only survive to the extent

11

that the plaintiff has evidence that the label used a different measure than prescribed by the FDCA. The plaintiff's expert report fails to carry the plaintiff's burden in this regard.

The Kahl report must be stricken for at least two independent reasons. First, it is irrelevant. It fails to provide a basis for finding that Laird failed to comply with the FDCA requirements for preparing labels. Kahl states that he conducted his measurements "from the perspective of a consumer," and that he did not follow the FDA Guidance because it "is appropriate for the manufacturer, but not for a consumer." But Kahl's "consumer" measurements have no bearing on whether Laird failed to follow the prescribed regulatory scheme. To the extent Kahl argues that the FDA Guidance and regulations result in misleading labels for a consumer, that issue is preempted, and more properly addressed to the FDA.

Second, the report does not comply with Daubert's requirements. It does not describe a scientifically reliable methodology of measurement. Instead, Kahl's report describes a rudimentary measurement process, taken "in the same manner one would expect of any consumer," not an expert metrologist. Kahl's description of his methodology states only that he "measured" the Product weights. He omits critical information concerning the reliability of his equipment, his method for

filling a teaspoon, and whether he packed or leveled the Product in the teaspoon. Kahl offers no description of his analytical practices, and reported final values only to the nearest tenths place. Moreover, while Kahl was not required to follow the FDA Guidance -- including that any volume measured should weigh at least 10x the serving size -- his report provides no academic or scientific support for the method he employed, nor does it explain the potential error rate or the methodology's degree of acceptance within the relevant scientific community. This falls far short of the level of intellectual rigor mandated by Daubert and Rule 702.

The Kahl report contains a number of additional flaws. Had the plaintiff adequately established the report's relevance and reliability, these flaws may not have been determinative. Kahl assessed only one sample of Product per flavor variety. He did not independently source any of the Products for testing, and he failed to describe the condition of the Products in his initial report.[4] Moreover, the reports omit information regarding temperature and how many individuals were involved in the

---

[4] In his rebuttal, Kahl states "[a]ll the products were within their expiration dates, and none of the products demonstrated evidence of being opened, being damaged or tampered with in any way."

experiments.[5]  These flaws further support exclusion of the reports under Daubert.

Plaintiff's counterarguments are unavailing.  Gwinn primarily argues that the FDA Guidance is not mandatory, and that Kahl did not need to employ the FDA's suggested measuring techniques in his analysis.  While the plaintiff is not required to adhere to the FDA Guidance, that Guidance presents a method used by experts to verify the accuracy of serving sizes in nutrition labels.  Plaintiff has failed to offer any evidence that Kahl "employs the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Restivo v. Hessemann, 846 F.3d 547, 577 (2d Cir. 2017) (citation omitted).  Moreover, the report is only relevant to the extent that it shows Laird violated the FDCA.  Kahl's methodology does not provide a basis to believe that Laird failed to comply with the regulatory scheme.

Lastly, the plaintiff argues that Laird's criticisms concern the weight of Kahl's evidence and not its admissibility, citing two cases from this district.  This argument fails as well.  To be admissible under Rule 702, Fed. R. Evid., "[p]roposed testimony must be supported by appropriate

---

[5] The report states only that the "received conditions" and "storage conditions" were "ambient."

validation -- i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590. The plaintiff has offered no evidence that Kahl's "consumer perspective" methodology meets this threshold level of reliability. The cases plaintiff cites are inapposite.

## Conclusion

The defendant's June 30, 2023, motion to exclude the expert report and testimony of Nidal Kahl is granted.

Dated:  New York, New York
        September 8, 2023

                                    _____
                                          DENISE COTE
                                    United States District Judge